**WRIGHTSMAN PETROLEUM CO. et al. v.
UNITED STATES.**

No. 43387.

Court of Claims.

Oct. 7, 1940.

88

94

C. F. Rothenburg, of Washington, D. C. (Charles D. Hamel, Lee I. Park, John Enrietto, and Hamel, Park & Sanders, all of Washington, D. C., on the brief), for plaintiff.

Guy Patten, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen., (Robert N. Anderson and Fred K. Dyar, both of Washington, D.C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, and GREEN, Judges.

WHITAKER, Judge.

This case presents two questions: (1) whether the plaintiff is entitled on the merits to certain deductions for depletion; and (2) whether a claim therefor was filed in time. We think it necessary to discuss only the latter question.

Plaintiff is the parent of the Osage Oil Corporation, against which, on August 17, 1928, the Commissioner of Internal Revenue asserted a deficiency for the year 1926 in the amount of $17,170.87. The plaintiff admitted that that company was liable for additional taxes in the amount of $1,713.-53, but denied liability for the balance. On May 27, 1929, it filed claim for refund for $15,290.68 *for the year 1927,* setting out the foregoing facts, and concluding as follows: "The prosecution of this claim for refund is contingent upon the final determination by the Bureau, or other proper tribunal, that the Osage Oil Corporation is liable for such additional tax *for said year 1926.*" (Italics ours.)

This claim was filed within the statutory period. Later, on March 4, 1935, the plaintiff filed what it called an "amended claim" asking refund of a slightly larger amount, to-wit: $15,650.68. In this claim it asked for additional deductions of—

"(1) Additional depletion in the amount of $67,830.69 with respect to the aforesaid items of gross income from retained interests in oil and gas leases, and

"(2) A loss on the liquidation of the Wrightsman Oil Company in the amount of $40,396.17."

This claim was filed after the expiration of the statute of limitations. But the plaintiff insists that it was filed in time, since it was an amendment of its claim previously filed on May 27, 1929.

If incorrect in this, the plaintiff says that it was an amendment of a second

claim for refund filed by it on February 7, 1931, in the amount of $4,602.66. This claim was filed because on January 27, 1931, the Commissioner of Internal Revenue had advised plaintiff of a proposed overassessment for 1927 of this amount. The claim for refund asked for the refunding of this amount, and concluded as follows: "The proposed refund of the Treasury Department of the United States Government in the above sum is hereby accepted by Wrightsman Petroleum Company with the specific understanding that such payment shall in no wise prejudice or conclude the rights of the said Wrightsman Petroleum Company, and the Osage Oil Corporation, or either of them, to assert, demand and/or maintain its or their, or either of their, claims for refund or credit growing out of the assessment for income taxes for the years 1926 and 1927, or either of said years, against Wrightsman Petroleum Company or Osage Oil Corporation, or either of them, for said years 1926 and 1927, or either of said years."

If incorrect in both of the above positions, the plaintiff says that the claim of March 4, 1935, was a perfection of two informal claims alleged to have been filed by it on July 8, 1929, and on March 10, 1930. On July 8, 1929, a Revenue Agent, who had made an examination of the income-tax returns of the plaintiff and its affiliates for the year 1927, filed his report with the Commissioner of Internal Revenue. In this report the Revenue Agent stated that the plaintiff—"claims allowance of 27½% depletion on oil and gas sales from properties where taxpayer claims oil and gas rights were retained through previous sales."

Also on March 10, 1930, the Agent filed a supplemental report in which he said that the plaintiff—"claims allowance of 27½% depletion on oil and gas sales from properties where taxpayer claims oil and gas rights were retained thru previous sales. Owing to illness Mr. Lea is unable to prepare a formal protest for submission at this date but will submit same within the near future."

It is alleged that plaintiff's oral statements of this claim to the Revenue Agent, coupled with reports of it by the Revenue Agent to the Commissioner of Internal Revenue, constitute informal claims for refund which were perfected by the formal claim filed on March 4, 1935.

We think no one of these three propositions can be maintained.

The purpose of a claim for refund is to put the defendant on notice that the taxpayer claims that his taxes have been erroneously assessed, and that he demands a return of the amount thereof. Such notice is considered necessary in order that the Government may know what revenue it will have available to meet its obligations. Manifestly, if there were no requirement for such notice and if the taxpayer might at any time, without previous notice, demand the return of taxes alleged to have been erroneously collected, the revenues of the Government would be quite uncertain.

For the same reason it is well established that if a taxpayer files a claim for refund on a specific ground, it cannot later, after the running of the statute, file a claim on an entirely unrelated ground.

The claim filed on May 27, 1929, was filed solely because the Commissioner was asserting a deficiency against the Osage Oil Corporation *for the year 1926*, since this in some way apparently affected its tax liability for 1927. It expressly stated that the prosecution of it was "contingent upon the final determination by the Bureau, or other proper tribunal, that the Osage Oil Corporation is liable for such additional tax for said year 1926." The ground of illegality which was asserted in the 1927 assessment was the alleged error in asserting a deficiency for 1926. It had no reference whatever to the taxpayer's right to deduct depletion for the year 1927, and, therefore, the claim of March 4, 1935, cannot in any sense be considered as an amendment of the claim of May 27, 1929.

Nor can the claim of March 4, 1935, be considered an amendment of the claim of February 7, 1931. This claim was based on the grounds set out in the Commissioner's letter advising of the overassessment. It was for the sum of $4,602.66, and this amount has been refunded. The claim of March 4, 1935, is grounded on distinct and unrelated grounds. It is for $15,650.68, which is in addition to the amount claimed on February 7, 1931.

The statement in the claim of February 7, 1931, that the plaintiff is willing to accept the amount of the overassessment then claimed "with the specific

understanding that such payment shall in no wise prejudice or conclude the rights of" the plaintiff "to assert, demand and/or maintain its or their, or either of their, claims for refund or credit growing out of the assessment for income taxes for the years 1926 and 1927, or either of said years, * * *", can avail plaintiff nothing. It apparently has reference to claims already on file, none of which assert the grounds now asserted. Nor can it avail anything if it can be construed to refer to claims which the plaintiff might thereafter file because it is not within the power of a taxpayer to thus toll the running of the statute. Manifestly, a taxpayer by his own ipse dixit cannot extend the statutory period.

■ It is true that the plaintiff informally put the Commissioner on notice that it claimed depletion on oil and gas sales, which was one of the bases of the formal claim of March 4, 1935, but this was in the form of a protest against the proposed additional assessment. This does not suffice as a claim for refund. If the tax is paid notwithstanding the protest, and no claim for refund is later filed, it may well be assumed that the protest is abandoned. Semmes Motor Co. v. United States, 67 Ct.Cl. 631. Moreover, the Revenue Agent's report of July 8, 1929, which advised the Commissioner of this claim of the taxpayer, stated that "A detailed statement will be submitted on receipt of copy of report." This evidently means the taxpayer will submit such a statement. Also in the later report of the Revenue Agent it was stated, "Owing to illness Mr. Lea is unable to prepare a formal protest for submission at this date, but will submit same within the near future." The record fails to show that any such statement or protest was ever submitted. This is another indication that the taxpayer had abandoned its contention.

■ But apart from all this, an oral claim made to a Revenue Agent is not a sufficient compliance with the statute requiring the *filing* of a claim by the taxpayer. An oral claim cannot be filed. The claim must be in writing. This is a requirement, not of the regulations, but of the statute and, therefore, is something which the Commissioner has no right to waive.

There is good reason for the requirement that the claim be in writing. It is common knowledge that the personnel in governmental departments is constantly changing. Many times several different employees work on a single case. Some of them have before them only such information as is contained in the files. For this reason, and because of the shortness of the memory of man, and for many other reasons, only a written claim is sufficient to meet the requirements of the statute and the need it intended to fill. Ritter v. United States, 3 Cir., 28 F.2d 265.

Nor can the fact that the Revenue Agent reported the taxpayer's oral claim be considered a filing of the claim by the taxpayer. The fact that the Revenue Agent's report disclosed that such an oral claim was made to him, and the fact that a formal claim as required by law was not seasonably filed later, are indications of the fact that the taxpayer did not intend to prosecute the claim. The purpose of the claim for refund being to put the Government on notice that it may have to return the money claimed, such an oral claim, unaccompanied by a later formal claim, filed within the statutory period, fails to meet the requirements of the statute.

We, therefore, hold that the claim of March 4, 1935, came too late.

This makes it unnecessary to discuss on the merits whether or not the plaintiff is entitled to the depletion claimed.

Plaintiff's petition will be dismissed. It is so ordered.