James Edwin **RHODES, Individually and as Executor of the Estate of Juanita Rhodes, Janae Ellen Kile, and Jock Elden Rhodes, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 81–892.

United States District Court, D. Oregon.

April 9, 1982.

---

Jeffrey L. Dye, Robert G. Burt, Burt & Hagen, P.C., Portland, Or., for plaintiffs.

Charles H. Turner, U.S. Atty., Portland, Or., G. Scott Nebergall, Trial Attorney, Tax Division, Dept. of Justice, Washington, D.C., for defendant.

## OPINION

REDDEN, Judge:

Plaintiffs are the executor and beneficiaries of the estate of Juanita Rhodes. The plaintiffs brought this action against the United States to obtain a refund of federal estate taxes paid on behalf of the estate of Juanita Rhodes. The United States moves to dismiss on the ground that this court has no subject matter jurisdiction. This motion is based on the contention that the estate did not file a timely and proper claim for a tax refund and that such failure is a jurisdictional defect. The plaintiffs move for summary judgment on the ground that a timely claim for a refund was filed and is proper. The United States also moves for entry of a protective order.

## FACTS

Juanita Rhodes died testate on December 31, 1971. Her will and codicil named her son, James E. Rhodes, as executor and two charities (the American Cancer Society and the library of Bonner County, Idaho) and her grandchildren as beneficiaries. The executor offered the will and codicil for probate in Idaho when the executor apparently

believed that only Idaho assets were part of the estate. The Idaho court determined that the decedent's children were pretermitted heirs and entered a final decree on October 22, 1973, invalidating the charitable bequests and distributing the estate to the decedent's children.

After the entry of the Idaho decree, the executor discovered California property within the estate, which increased its value two thirds. The executor petitioned a California court for probate. The California court decided that the Idaho decree was not entitled to full faith and credit, that the decedent's children were not pretermitted heirs, and the decedent's grandchildren and the American Cancer Society would share the estate. Judgment was entered February 6, 1979 and the California Supreme Court denied a petition for review on May 14, 1980.

On September 21, 1972 the estate filed a United States Estate Tax Return, Form 706 (First Form 706). The First Form 706 listed only Idaho assets because it was filed before the discovery of the California property. The First Form 706 showed a total gross estate of $66,914.10 and a total taxable estate of zero. On December 27, 1972 the Internal Revenue Service (IRS) sent an estate closing letter showing that there was no federal estate tax liability.

On March 2, 1976 the estate filed an amended United States Estate Tax Return, Form 706 (Second Form 706). The Second Form 706 was filed after the institution of proceedings in the California courts and before the ruling that the Idaho decree was not entitled to full faith and credit and that the charitable bequest was effective. The Second Form 706 reported both Idaho and California assets, reported a total gross estate of $225,946.58 and reported a taxable estate of $134,719.52. A check, in payment of the tax and interest, accompanied the return. On August 26, 1977 the IRS notified the estate of its acceptance of the amended return and the tax shown on the return.

On January 3, 1979 the estate filed a second amended United States Estate Tax Return, Form 706 (Third Form 706). The Third Form 706 claimed a refund of estate taxes, in the amount of $18,259.95 with interest, on the ground that the charitable bequest was allowed by the California court and therefore entitled the estate to charitable deductions which reduced the amount of the estate tax. On September 24, 1979 the IRS notified the estate that the claim for a refund was being disallowed because it was not filed within three years of the First Form 706 or within two years of the payment of the estate tax. The plaintiffs then instituted this action.

## ARGUMENTS

26 U.S.C. section 7422(a) provides that a proper and timely filing of a claim for a refund under 26 U.S.C. section 6511(a) is a prerequisite to maintenance of a suit for refund of taxes paid. 26 U.S.C. section 6511(a), entitled "Period of limitation on filing claim," provides:

> Claim for . . . refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return *shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid,* whichever of such periods expires the later . . . .

(emphasis added). The parties do not dispute the effect of these statutes; they dispute whether there was compliance.

The United States contends that the claim for a refund, filed 1/3/1979, was not timely because it was filed more than three years after the First Form 706 was filed (9/21/1972) and more than two years after the tax was paid (3/2/1976).

The plaintiffs offer two alternative theories to support their contention that the claim for a refund was proper and timely. First, the First Form 706 was not a "return" within the meaning of section 6511(a). The Second Form 706 was a true return and the claim for a refund was filed less than three years after the Second Form 706 was filed. Plaintiffs argue that the First Form 706 was not a true return because it errone-

ously valued the estate and erroneously described the estate by omitting the California property.

Plaintiffs' second argument is that the Second Form 706 constituted an informal claim for a refund and was timely because it was filed with the tax payment. The United States contends that the Second Form 706 was not a claim for a refund because it did not contain sufficient information.

## DISCUSSION

### 1. *Was the First Form 706 a Return?*

■ Plaintiffs argue that because the First Form 706 disclosed only Idaho assets, "barely" one third of the total gross estate, showed no tax owing and no tax was paid on the basis of that form, it was merely an "informational" return and was not a true return within the meaning of section 6511(a), the statute of limitations.

In *United States v. Klee,* 494 F.2d 394 (9th Cir.), *cert. denied,* 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974), the Ninth Circuit adopted the rule that an income tax return does not constitute a return within the meaning of the Internal Revenue Code if the return "does not contain any information relating to the taxpayers' income from which the tax can be computed...." 494 F.2d at 397, *quoting United States v. Porth,* 426 F.2d 519, 523 (10th Cir.1970). In *United States v. Long,* 618 F.2d 74 (9th Cir.1980), the Ninth Circuit ruled that, in contrast to a return which contains no information, as in the *Klee* case, *supra,* "[a] return containing false or misleading figures is still a return."

I conclude that the First Form 706 filed by the estate constituted a return within the meaning of the Internal Revenue Code. The return did contain false and misleading information because the California property was not reported. However, the return did contain some accurate information: the listing of the Idaho assets. The return therefore fell within the category described in *United States v. Long, supra,* and was a bona fide return within the meaning of 26 U.S.C. section 6511(a).

### 2. *Was the Second Form 706 an Informal Claim for a Refund?*

■ An informal claim for a refund is valid. *American Radiator & Standard San. Corp. v. United States,* 318 F.2d 915, 920, 162 Ct.Cl. 106 (1963) (*American Radiator*). A valid informal claim or a refund

> should adequately apprise the Internal Revenue Service that a refund is sought and for certain years [citations omitted]. It is not enough that the Service have in its possession information from which it might deduce that the taxpayer is entitled to or might desire, a refund; ... [citations omitted]. On the other hand, the writing should not be given a crabbed or literal reading, ignoring the circumstances which give it body and content. The focus is on the claim as a whole, not merely the written component [citations omitted]. In addition to the writing and some form of request for a refund, the only essential is that there be available sufficient information as to the tax and the year to enable the Internal Revenue Service to commence, if it wishes, an examination into the claim.

*Id.*

> Each case must be decided on its own peculiar set of facts with a view towards determining whether under those facts the Commissioner knew, or should have known, that a claim was being made. [citation omitted]. The general test is whether "[t]he commissioner's attention should have been focused on the merits of the particular dispute" by the alleged informal claim.

*Kuehn v. United States,* 480 F.2d 1319, 1320–1321 (Ct.Cl.1973).

■ An examination of the Second Form 706, Exhibit B to the plaintiffs' complaint, shows the following to be construed in determining whether there was an informal request for a refund: Schedule N of the Second Form 706, "Charitable, Public and Similar Gifts and Bequests" claims no charitable deductions and answers yes to the question,

Has any action been instituted to have interpreted or to contest the will or any provision thereof affecting the charitable deductions claimed in this schedule?

The answer "yes" is also written in response to the question:

According to the information and belief of the person or persons filing the return, is any such action designed or contemplated?

After each question, the schedule directs, "If 'Yes,' full details must be submitted under this schedule." The details submitted are a notation on the schedule:

(Note to Mr. Lyons: If apply Idaho decree to California assets, this page becomes None re both items 1 and 2 and page total.)

Items 1 and 2 are the listed charitable beneficiaries: (1) the Bonner County Library (¼ of residue of estate) and (2) the American Cancer Society (¼ of residue of estate). This is the extent of "full details" submitted under schedule N.

Page 1 of the Second Form 706 reports "ancillary proceedings" taking place in the San Bernadino Superior Court in California.

I conclude that the Second Form 706 does not advise the Commissioner that the form is a request for a refund, *American Radiator,* 318 F.2d at 920, or focus the Commissioner's attention on the merits of the particular dispute, *Kuehn v. United States,* 480 F.2d at 1321. The information provided in the Second Form 706 provides merely what *American Radiator* declared insufficient to constitute a valid refund claim: information from which the IRS "might deduce that the taxpayer is entitled to or might desire a refund." 318 F.2d at 920.

I conclude that the Second Form 706, filed March 2, 1976, was not a claim for a refund. The claim for a refund was the Third Form 706, filed January 3, 1979. The claim for a refund was filed more than three years after the original return, filed September 21, 1972, was filed. The claim for a refund was filed more than two years after the tax, paid March 2, 1976, was paid. Accordingly, the claim for a refund was not timely filed under 26 U.S.C. section 6511(a).

Because there was no compliance with section 6511(a), this action is prohibited under 26 U.S.C. section 7422(a). *See Noland v. Westover,* 172 F.2d 614 (9th Cir.1949).

I conclude that defendant's motion to dismiss should be granted and plaintiffs' motion for summary judgment denied. Because defendant's motion to dismiss disposes of the case, I do not reach the defendant's motion for a protective order.